```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------x
NICOLE SCHEIDEMANN,                 :
                                    :
              Plaintiff,            :
                                    :      04 Civ. 3432 (LAP)
       -against-                    :
                                    :      OPINION AND ORDER
QATAR FOOTBALL ASSOCIATION,         :
QATAR NATIONAL OLYMPIC COMMITTEE,   :
                                    :
              Defendants.           :
-----------------------------------x
```

LORETTA A. PRESKA, United States District Judge:

This action stems from an alleged breach of contract between Plaintiff Nicole Scheidemann and Defendants Qatar Football Association ("QFA") and Qatar National Olympic Committee ("QNOC"). Plaintiff claims to be entitled to compensation for arranging a football (translation: soccer) match between the Qatari National Team and Italian-based AC Milan. Before the Court are defendants' motions to dismiss for lack of subject matter jurisdiction. For the reasons discussed below, the motions are GRANTED.

## BACKGROUND

The underlying dispute in this case is uncomplicated. Plaintiff claims that she was retained by the defendants to arrange an exhibition match between the prominent AC Milan and the Qatari National Team and that the defendants failed to pay

her commission. (Compl. ¶¶ 5, 8, 11-12.)[1] Despite being a German citizen and conducting all negotiations overseas, Plaintiff alleges that the parties agreed "that any disputes [over the agreement] would be construed and governed by the laws of New York, in the federal courts located in New York." (Compl. ¶ 38.) After failing to receive payment, she filed this action for, inter alia, the recovery of her commission.[2]

DISCUSSION

This Court does not have jurisdiction over any and every case. To the contrary, the Supreme Court has "repeatedly said: Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree. It is to be presumed that a cause lies outside this limited jurisdiction." Rasul v. Bush, 542 U.S. 466, 489 (2004) (internal citations omitted). This case turns on whether the limited jurisdiction of this Court is invoked by the Foreign Sovereign Immunities Act.

---

[1] "Compl." refers to the Complaint filed on May 4, 2004.

[2] Plaintiff also brings claims for unjust enrichment, quantum meruit, interference with contractual relations, and intentional interference with a prospective economic advantage. (Compl. ¶¶ 98-142.)

2

I.  Standard for Dismissal For Lack of Subject Matter Jurisdiction

Federal courts must satisfy themselves of the presence of subject matter jurisdiction as a threshold matter before proceeding to the merits of a case. See, e.g., Wynn v. AC Rochester, 273 F.3d 153, 157 (2d Cir. 2001). The plaintiff bears the burden of proving, by a preponderance of evidence, that a court has subject matter jurisdiction. Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000). The action must be dismissed unless Plaintiff can demonstrate, on the face of the complaint, that one of the options for satisfying subject matter jurisdiction has been specifically met. Tasini v. New York Times Co., 184 F. Supp. 2d 350, 358 (S.D.N.Y. 2002). When ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court may look beyond the pleadings if necessary to resolve any disputed issues necessary to the Court's ruling. See Robinson v. Gov't of Malaysia, 269 F.3d 133, 140 (2d Cir. 2001).

II. Plaintiff Has Failed to Prove Subject Matter Jurisdiction

The complaint in this case contains one paragraph dedicated to jurisdiction, which reads:

> This Court has jurisdiction over this case pursuant to 28 U.S.C. § 1330 because it is an action against agencies and instrumentalities of a foreign state as defined in section 1603(a), and furthermore, because

the parties agreed in writing, in advance of the
dispute to submit to the jurisdiction of this Court.

(Compl. ¶ 6.)

    A.  <u>Parties Cannot "Agree" To Federal Jurisdiction</u>

The latter basis for jurisdiction – that the parties have "agreed to jurisdiction" – can be easily rejected. (<u>See</u> Pl.'s QNOC Mem. at 2.)[3] Parties cannot confer subject matter jurisdiction on a federal court by agreement. <u>Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee</u>, 456 U.S. 694, 702 (1982) ("[N]o action of the parties can confer subject-matter jurisdiction upon a federal court. Thus, the consent of the parties is irrelevant.").

    B.  <u>Plaintiff Has Not Proven That Either Defendant is an "Organ" of The Qatari Government</u>

        1.  <u>The Statute</u>

The only remaining basis for jurisdiction that Plaintiff has pleaded is the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. 1602 <u>et</u> <u>seq</u>. (2000 ed. & Supp IV). Under the FSIA, this Court has jurisdiction over claims against "foreign states," a term which is defined to include those states' agencies and instrumentalities. <u>See</u> 28 U.S.C. §§ 1330, 1603(a). Section

---

[3] "Pl.'s QNOC Mem." refers to Memorandum of Law in Opposition to Qatar National Olympic Committee's Motion to Dismiss, filed on December 10, 2004.

1603(b), in turn, defines an "agency or instrumentality" as any entity:

>    (1) which is a separate legal person, corporate or otherwise, and
>    (2) which is an organ of a foreign state or political subdivision thereof, or a majority of whose shares or other ownership interest is owned by a foreign state or political subdivision thereof, and
>    (3) which is neither a citizen of a State of the United States . . . nor created under the laws of any third country.

The Defendants do not dispute that they meet Section 1603(b)'s first and third requirements for agency or instrumentality status. (See Def. QNOC Mem. at 8; Def. QFA Mem. at 11.)[4] And Plaintiff does not contend that the Government of Qatar owns the Defendant entities. (See Pl.'s QNOC Mem. at 15; Pl.'s QFA Mem. at 20-22) (arguing only that the entities are "organs" or "agents" of the Qatari government).[5] Thus the discrete inquiry required is whether the Defendant entities are "organ[s] of a foreign state" within the meaning of the FSIA.

---

[4] "Def. QNOC Mem." refers to Memorandum of Law in Support of Motion to Dismiss for Lack of Jurisdiction of Defendant Qatar National Olympic Committee, filed on October 26, 2004. "Def. QFA Mem." refers to Defendant Qatar Football Association's Memorandum of Law in Support of Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and Alternatively, Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6), filed on October 1, 2004.

[5] "Pl.'s QNOC Mem." refers to Memorandum of Law in Opposition to Qatar National Olympic Committee's Motion to Dismiss, filed on December 10, 2004. "Pl.'s QFA Mem." refers to Memorandum of Law in Opposition to Qatar Football Association's Motion to Dismiss, filed on November 17, 2004.

2.  The Nature of the Defendant Entities

According to QNOC, the QNOC is an independent organization under Qatari law – it is governed by an independent board and it issues no shares or other ownership interests. (Sec. Gen. Decl. at ¶¶ 4-6.)[6] It was established by Emiri Decree and is funded, in part, by the Qatari Government, but the government of Qatar does not have any operational control over the QNOC. (Sec. Gen. Decl. ¶¶ 4, 9, 11.) The QNOC's Board of Directors have sole authority for hiring employees. (Sec. Gen. Decl. ¶ 12.) And, in fact, as a member of the International Olympic Committee ("IOC"), the QNOC is required by IOC rules and regulations to maintain its independence from the State of Qatar. (Sec. Gen. Decl. ¶ 14.)

According to the QFA, the QFA is an unincorporated association formed for the purposes of promoting football in Qatar and for arranging matches for the Qatari national football team around the world. (Mohannadi Aff. ¶¶ 2, 4.)[7] Consistent with the requirements of the Fédération Internationale de Football Association ("FIFA"), QFA is an independent entity, and Qatar does not supervise or control the activities of the QFA.

---

[6] "Sec. Gen. Decl." refers to the Declaration of The Secretary General of the QNOC, Saoud bin Adulrahman Al-Thani, attached to Def. QNOC Mem. as Exhibit B.

[7] "Mohannadi Aff." refers to the Affidavit of Saud Al Mohannadi annexed to Def. QFA Mem. as Exhibit A.

(Mohannadi Aff. ¶¶ 4, 7.) The organization was not created by Qatar; was not established to serve a "national purpose"; and does not hold any exclusive rights in the country. (Mohannadi Aff. ¶ 6.)

Plaintiff disputes the notion that the Qatari government has such a "hands-off" attitude towards these organizations. Referencing publicly available information on the internet and her own personal experiences in Qatar, she alleges, as for the QFA, that: members of the Qatari royal family held positions in QFA; that some QFA salaries are in one of Qatar's Planning Council reports of "Government Expenditures"; that QFA's mailing address can be found on a web site that lists "'government' post office boxes"; and that QFA had "exclusive rights" to market the Qatar Football League. (Scheidemann Decl. ¶¶ 47, 56, 60, 72, 74, 77-80.)[8] As for the QNOC, Plaintiff, again from her personal experience and internet research, alleges that the QNOC: was founded by government decree; that members of the Qatari royal family held positions in QNOC; that QNOC must follow Qatari law; that some QNOC salaries are listed in one of Qatar's Planning Council reports as "Government Expenditures"; that QNOC's mailing address can be found on a web site that lists

---

[8] "Scheidemann Decl." refers to Declaration of Nicole Scheidemann, filed on November 3, 2005.

"'government' post office boxes"; and that QNOC had national objectives. (Scheidemann Decl. ¶¶ 44-80.)

3. <u>The Legal Test for "Organ" Status Under the FSIA</u>

There is no definitive test for interpreting the term "organ" as used in Section 1603(b)(2) of FSIA. <u>Murphy v. Korea Asset Mgmt. Corp.</u>, 421 F. Supp. 2d 627, 641 (S.D.N.Y. 2005). The Court of Appeals has identified the following factors as relevant to the determination:

> (1) whether a foreign state created the entity for a national purpose;
> (2) whether a foreign state actively supervises the entity;
> (3) whether a foreign state requires the entity to hire public employees and pays their salaries;
> (4) whether the entity holds exclusive rights to some right in a state; and
> (5) whether the entity is treated as a governmental organ under the laws of a foreign state.

<u>Filler v. Hanvit Bank</u>, 378 F.3d 213, 217 (2d Cir. 2004). But these factors should not be applied mechanically. <u>Kelly v. Syria Shell Petroleum Dev. B.V.</u>, 213 F.3d 841, 847 (5th Cir. 2000); <u>Murphy</u>, 421 F. Supp. 2d at 641. Thus, courts must remain mindful of the ultimate inquiry: whether the entity "engages in activity serving a national interest and does so on behalf of its national government." <u>USX Corp. v. Adriatic Ins. Co.</u>, 345 F.3d 190, 209 (3d Cir. 2003). The Court must ask whether the entity in question is of such a nature that it retains "close

8

connections" to the foreign state, while not being majority owned by the state and possibly without "ownership interests familiar to U.S. judges or lawyers."[9] The paradigmatic example of an organ is a central bank. See Working Group Report 516; Cf. Filler, 378 F.3d 213 (2d Cir. 2004) (applying the five factor test to the Korea Deposit Insurance Corporation and concluding that the entity was an organ); Murphy, 421 F. Supp. 2d 627 (S.D.N.Y. 2005)(applying the Filler factors to the Korea Asset Management Corporation and reaching the same conclusion). But the term is certainly broader.[10] Mindful of these considerations, the Court will consider whether the defendants in this case constitute "organs" of a foreign state.

---

[9] Working Group of the American Bar Association, Reforming the Foreign Sovereign Immunities Act, 40 Colum. J. Transnat'l L. 489, 516(2002) ("Working Group Report"). The Working Group concludes that an entity should not be viewed as an organ "except in rare situations, such as when the foreign state supervises, controls, or is otherwise closely involved with the entity."

[10] See H.R.Rep. No. 94-1487, 94th Cong., 2d Sess. (1976), reprinted in, 1976 U.S.C.C.A.N. 6604, 6614. ("[E]ntities which meet the definition of an 'agency or instrumentality of a foreign state' could assume a variety of forms, including a state trading corporation, a mining enterprise, a transport organization such as a shipping line or airline, a steel company, a central bank, an export association, a governmental procurement agency or a department or ministry which acts and is suable in its own name.")

### 4. Plaintiff Has Failed to Demonstrate that the QNOC and the QFA are Organs of Qatar

This case is complicated by its unusual posture. The FSIA was passed in order to protect foreign governments from the "affront" of being sued in these courts. Thus ordinarily it is the "organ" of the foreign state as <u>defendant</u> seeking to prove that it is protected by the FSIA. Here, however, the roles are reversed. Instead of filing in state court, where the New York Supreme Court may very well have been able to exercise jurisdiction,[11] Plaintiff filed in federal court – a decision that may have been predicated on the erroneous belief that parties could consent to federal jurisdiction. (<u>See</u> Compl. ¶ 6.) Consequently, Plaintiff is in the unusual position of having to first show that the defendants are organs of the Qatari government (presumptively giving them immunity) and then that one of FSIA's exceptions applies (removing such immunity).[12]

After reviewing the record, the Court concludes that Plaintiff has failed to carry the burden of proving subject matter jurisdiction because Plaintiff has failed to prove that

---

[11] <u>See</u> N.Y. Gen. Oblig. L. § 1-5402 (affording New York courts jurisdiction in breach of contract actions against foreign corporations involving not less than one million dollars).

[12] <u>Cf.</u> <u>In re Terrorist Attacks on September 11, 2001</u>, 392 F. Supp. 2d 539, 547 (S.D.N.Y. 2005) (describing the usual procedure, whereby the defendant presents a prima facie case that it is a foreign sovereign, then the plaintiff bears the burden of going forward with evidence showing that, under the exceptions to the FSIA, immunity should not be granted).

the defendants are organs of the government of Qatar. Applying the Filler factors, the Court finds the following:

First, neither agency was created exclusively to serve national purposes. The QNOC was created to facilitate Qatar's participation in the Olympics and, accordingly, to comport with the IOC Charter. The Charter requires that participating countries certify compatibility with the IOC's various objectives, including the promotion of the fundamental principles and values of "Olympism" and stimulating interest in sport and physical education. (See QNOC Statutes.)[13] Furthermore, other organizations within Qatar serve similar functions, such as supporting sports and sports education. See Supra Med. Corp. v. R. McGonigle, 955 F. Supp. 374 (E.D. Pa. 1997) (overlapping functions of entities weighs against considering them instrumentalities). The QFA likewise denies being established for a national purpose and must conform to the requirements of the international governing body FIFA. (See Mohannadi Aff. ¶¶ 6-7.)

Second, neither entity holds exclusive rights in the state of Qatar. An organization called the Doha Asian Games Organizing Committee ("DAGOC") shares responsibility for organizing sports events and supports sports in Qatar. (See Sec. Gen. Decl. ¶ 18.)

---

[13] "QNOC Statutes" refers to the statutes annexed to Sec. Gen. Decl. as Exhibit B.

Accordingly, Plaintiff can point to no "right" that is held "exclusively" by either defendant.

Third, both entities are treated as independent entities under the law of Qatar. The QNOC operates independently from the government. Its charter does not give the government the right to control it or its affairs, and it does not submit annual reports to the government. (Sec. Gen. Decl. ¶ 9.) Similarly, the QFA, in accordance with FIFA's requirements, is an independent unincorporated association. (Mohannadi Aff. ¶¶ 2, 4.)

The only disputed factors that the Court of Appeals has identified as relevant are the extent to which the Qatari government exercises control over these entities, including control over personnel. Plaintiff vehemently contends that the Qatari Emir plays an active role in supervising these organizations and that while the employees are, in name, employed by the defendants, the Government is actually financing them. (See e.g., Scheidemann Decl. ¶ 55.)

In the final analysis, however, the Court finds that Plaintiff's declarations – which are not based on personal knowledge – fail to carry Plaintiff's burden of proof. On this record, the Court finds that these entities are independent from the government and not "organs" of a foreign state under the meaning of the FSIA.

Alternatively, even if the Court were to credit Plaintiff's hearsay allegations, they are insufficient to demonstrate that the defendants are organs of Qatar. Two considerations in particular lead the Court to this conclusion. First, as discussed above, there is no dispute as to the <u>formal</u> legal status of these entities. The Supreme Court has counseled that "[d]ue respect for the actions taken by foreign sovereigns and for principles of comity between nations leads us to conclude . . . that government instrumentalities established as juridical entities distinct and independent from their sovereign should normally be treated as such." <u>First Nat. City Bank v. Banco Para El Comercio</u>, 462 U.S. 611, 627 (1983). <u>See also</u>, <u>Dole Food Co. v. Patrickson</u>, 538 U.S. 468, 474 (2003) (holding that because Congress "had corporate formalities in mind" when enacting the FSIA, the general rule is that corporate formalities will be respected); <u>Em Ltd. v. Republic of Argentina</u>, 473 F.3d 463, 479 (2d Cir. 2007) (noting that a presumption of separateness should be afforded to entities with separate juridical status). Here, like in <u>Em Ltd.</u>, there is no allegation that either entity is an "alter ego" of the Qatari government, an allegation that, if true, might warrant "piercing the corporate veil" upon a showing that fraud or injustice would result from respecting corporate formalities. <u>See</u> <u>Em Ltd.</u>, 473 F.3d at 479. In any event, veil-piercing is the "rare exception," applied only in exceptional

circumstances. See Dole, 538 U.S. at 475. In light of this well-recognized presumption in favor of separate juridical status, a presumption the Supreme Court has interpreted to apply to FSIA cases, the Court affords significant weight to the formal independence of these entities in concluding that they are not "organs" of the Qatari government.

A second factor has significant weight in the Court's analysis. There has been no showing, apart from conclusory allegations based on Plaintiff's experiences while living in Qatar, of the public function that these entities play. The FSIA enacted the "restrictive" theory of sovereign immunity, which confined immunity to suits involving the foreign sovereign's public acts. Verlinden B.V. v. Central Bank of Nigeria, 461 U.S. 480, 487 (1983) (emphasis added). Accordingly, courts generally treat entities as "organs" under the FSIA when they are "quasi-public entities [such] as national banks, state universities and public television networks." Patrickson v. Dole Food Co., 251 F.3d 795, 808 (9th Cir. 2001), aff'd on other grounds, 538 U.S. 468, 474 (2003). Plaintiff confuses the notion of "public" here. The Court does not doubt that these organizations are intended, in part, to provide entertainment to the Qatari people. But in asking whether the entities are "quasi-public," the answer turns on the function that these entities serve and whether that function is one that "serves the national interest," see USX

Corp. v. Adriatic Ins. Co., 345 F.3d 190, 209 (3d Cir. 2003), in such a way that it ought to be entitled to sovereign immunity under the "restrictive theory" codified in the FSIA. Plaintiff has made no such showing.

For these reasons, Plaintiff has failed to carry its burden of proving the existence of subject matter jurisdiction.

    C.   <u>Alternatively, Plaintiff Has Failed to Properly Plead Subject-Matter Jurisdiction</u>

As an alternative ground for dismissing this case, the Court finds that Plaintiff has not adequately pleaded subject matter jurisdiction in accordance with Fed. R. Civ. P. 8.

The Court must consider evidence outside the Complaint in the context of a motion to dismiss for lack of jurisdiction under the FSIA only if there is a disputed factual issue on which the case turns. See Robinson v. Malaysia, 269 F.3d 133, 140 n.6 (2d Cir. 2001). But Plaintiff retains the obligation under Rule 8(a)(1) to plead subject matter jurisdiction adequately. See 5B C. Wright & A. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004 & supp. 2007) (dismissal appropriate when pleader has failed to make allegations sufficient to show that federal court has jurisdiction over the subject matter of the case).

Again, the only statement about jurisdiction in the complaint is: "This Court has jurisdiction over this case

pursuant to 28 U.S.C. § 1330 because it is an action against agencies and instrumentalities of a foreign state as defined in section 1603(a)." (Compl. ¶ 6.) This legal conclusion does not satisfy Rule 8(a)(1)'s requirement of a "short and plain statement of the grounds for the court's jurisdiction." Although "the pleading standard is a liberal one, bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). "To survive dismissal, the plaintiff must provide the grounds upon which [her] claim rests through factual allegations sufficient 'to raise a right to relief above the speculative level.'" ATSI Commc'ns, Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 98 (2d Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1965 (2007)). The bald conclusion of law that Plaintiff recites to invoke this Court's jurisdiction is insufficient to do so. See Leeds, 85 F.3d at 53. The remainder of the complaint is equally deficient on the jurisdictional issue. See 5B C. Wright & A. Miller, Federal Practice and Procedure § 1350 (3d ed. 2004 & supp. 2007) ("[T]he pleading will be read as a whole with any relevant specific allegations found in the body of the complaint taking precedence over the formal jurisdictional allegation.").

Alternatively, even liberally construing the complaint as alleging "fraud or injustice," under a veil-piercing theory neither briefed nor alleged, the pleadings are inadequate under

16

Rule 9. See Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.").

III. The Court's Denial of Jurisdictional Discovery

A few words are in order about the Court's decision to deny Plaintiff's requests for discovery. Plaintiff has argued that the jurisdictional issue cannot be decided without discovery. But the only discovery that Plaintiff has sought would have no bearing on the Court's decision. Plaintiff asked to depose the agent who supposedly brokered the deal between the parties in this case, Mr. Manfred Hoener. (See generally 3/6/07 Ltr.)[14] Plaintiff believes that the deposition can demonstrate that Hoener had the "actual and apparent authority" to both enter into the agreement and to waive Qatar's sovereign immunity. (3/6/07 Ltr. at 8.) However, this proffered testimony has no bearing on the Court's conclusion that these entities are not "organs" of the Qatar within the meaning of the FSIA.

The Court has given the Plaintiff the opportunity to explain why jurisdictional discovery is necessary,[15] but none of

---

[14] "3/6/07 Ltr." refers to the Letter of Frank C. Welzer sent to the Court on March 6, 2007.

[15] See Reiss v. Societe Centrale du Groupe Des Assurances Nationales, 235 F.3d 738, 748 (2d Cir. 2000); cf. Order to Show Cause (dkt. no. 67); Tr. of Oral Arg. 12/21/07.

Plaintiff's discovery requests, like the Hoener deposition, would affect the Court's conclusion. Accordingly, mindful of the "circumspect" approach to discovery the Court must take in this case because of comity considerations, see First City, Texas-Houston v. Rafidain Bank, 150 F.3d 172, 176 (2d Cir. 1998), the Court has denied the requested discovery.

IV. Conclusion

This case is a contract dispute between a non-resident and foreign corporations which does not invoke the limited jurisdiction of this Court because the defendants are not organs of a foreign state under the FSIA. Accordingly, Defendants' motions to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) are GRANTED.

The Clerk of the Court shall mark this action closed and all pending motions denied as moot.

SO ORDERED:

Dated: New York, New York
January **15**, 2008

LORETTA A. PRESKA, U.S.D.J.